IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID WINEGARNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-cv-02171-K-BT |
| | § | |
| CITY OF IRVING TEXAS, et al., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this *pro se* civil rights action under 42 U.S.C. § 1983 are three separate Motions to Dismiss filed by (1) the Irving Police Department (IPD or the "Department") (ECF No. 9); (2) the City of Irving (the "City") (ECF No. 12); and (3) IPD Officers Preston Hammel, Travis Reyes, Justin Ivey, and John Phillips (the "Officer Defendants" or the "Officers") (ECF No. 10). For the reasons stated, the District Judge should GRANT the motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and DISMISS all of Winegarner's claims against the Department, the City, and the Officers.

**Factual Background**

Plaintiff David Winegarner, proceeding *pro se*, initiated this lawsuit on August 23, 2024 against the Department, the City, and IPD Officers Hammel, Reyes, Ivey, and Phillips. *See generally* Compl. (ECF No. 3). Winegarner's claims arise from his August 23, 2022 arrest, where he alleges that the Officer Defendants

used "unlawful and unreasonable [] excessive force" to arrest him by placing his "head up under [the] steering wheel, with [his seatbelt] harness on [his] left shoulder, choking [his] throat [while] both of [the officers'] knees [were] on [his] back." Compl. 1, ¶ 1.[1] Winegarner contends that the Officer Defendants' use of force was excess because he was not resisting arrest. Compl. ¶¶ 5, 31, 33, 36, 51.

The Defendants filed separate Motions to Dismiss. The Department's motion argues that Winegarner fails to allege facts establishing that IPD is a separate legal entity with jural authority. *See* IPD Mot. 4 (ECF No. 9). The City's motion argues that Winegarner's Complaint fails to plead a plausible claim for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); fails to state a claim for § 1983 failure to train or supervise; and fails to state a claim under Title VI. *See generally* City's Mot. (ECF No. 12). Lastly, the Officer Defendants' motion argues that Winegarner's claims for wrongful arrest, excessive force, and malicious prosecution are barred by qualified immunity, and he has failed to state a claim for failure to intervene and selective enforcement. *See generally* Officers' Mot. (ECF No. 10).

Winegarner filed a consolidated response to the motions to dismiss (ECF No. 14), and all Defendants joined in a consolidated Reply (ECF No. 15). Therefore, the motions are ripe for determination.

---

[1] Citations to "Compl. 1" are citations to the cover page of Winegarner's complaint that does not have a page number on the bottom right or a paragraph number. Any citations to the Complaint other than the cover page will be referred to using the respective paragraph number throughout the Complaint.

## Legal Standards

To survive a Rule 12(b)(6) motion, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

When applying the plausibility standard, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re*

*Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). But a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Review is "limited to the complaint, any documents attached to the complaint, and any documents attached to the [motion to dismiss] that are central to the claim and referenced by the complaint." *Smith v. Buffalo Wild Wings*, 2021 WL 4265849, at *2 (N.D. Tex. Sept. 20, 2021) (Fitzwater, J.) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)); *see also Inclusive Communities Project, Inc. v. Heartland Cmty. Ass'n, Inc.*, 399 F. Supp. 3d 657, 665 (N.D. Tex. 2019) ("In ruling on [a Rule 12(b)(6)] motion, the court cannot look beyond the pleadings." (citing *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999))), aff'd, 824 F. App'x 210 (5th Cir. 2020).

Courts considering Rule 12(b)(6) motions generally hold *pro se* complaints to less stringent standards than formal pleadings drafted by lawyers. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981)). However, "despite [the] general willingness to construe *pro se* filings liberally," courts "still require *pro se* parties to fundamentally abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014), *as revised* (Sept. 18, 2014) (cleaned up). Therefore, a *pro se* plaintiff is not excused from the requirements to "properly plead sufficient facts that, when liberally construed, state a plausible claim to relief[.]" *Id.* (citations omitted).

## Analysis

The Court addresses each of the motions to dismiss individually in the following order: (I) the Department's Motion; (II) the City's Motion; (III) the Officers' Motion. The Court concludes that all three motions should be GRANTED.

### I.    Winegarner fails to state a claim against the Department.

The Department moves to dismiss Winegarner's claims against it on the ground that he has failed to allege that the Department has a jural existence and is an entity that can be sued. *See* IPD Mot. 4.

"The capacity of an entity to sue or be sued 'shall be determined by the law of the state in which the district court is held.'" *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (quoting Fed. R. Civ. P. 17(b)). "Federal courts in Texas have uniformly held that entities without a separate jural existence, such as municipal police departments, are not subject to suit." *Grayson v. Dallas Police Dep't*, 2023 WL 2286646, at *1 (N.D. Tex. Feb. 2, 2023), *rec. accepted*, 2024 WL 69160 (N.D. Tex. Jan. 4, 2024); *accord Brodzki v. N. Richland Hills Police Dep't.*, 2010 WL 1685799, at *1 (N.D. Tex. Mar. 31, 2010) ("[A] police department is not a jural entity that can be sued."), *rec. accepted*, 2010 WL 1685798 (N.D. Tex. Apr. 19, 2010); *see also Harris v. Longview Police Dept.*, 2019 WL 1907466, at *2 (E.D. Tex. Mar. 26, 2019) ("The Longview Police Department, however, has no jural existence and cannot be sued."); *Morales v. Carrillo*, 2020 WL 3684864, at *23 (W.D. Tex. July 6, 2020) ("The Plaintiffs have failed to establish that [El Paso Police Department] enjoys a separate, legal existence from the City of El Paso and,

therefore, [El Paso Police Department] cannot be separately sued."), *rec. accepted*, 2021 WL 664854 (Feb. 19, 2021). "In order for a plaintiff to sue a city department, it must 'enjoy a separate legal existence.'" *Darby*, 939 F.2d at 313 (citations omitted). "Therefore, '[u]nless the political entity that created the department has taken "explicit steps to grant the servient agency with jural authority," the department lacks the capacity to sue or to be sued.'" *Evans v. City of Dallas*, 2017 WL 958607, at *6 (N.D. Tex. Mar. 13, 2017) (citations omitted). "The burden of showing that the city or county department has the capacity to be sued rests on the plaintiff." *Cortes v. Havens*, 2014 WL 6861245, at *6 (N.D. Tex. Dec. 5, 2014) (citation omitted).

Here, Winegarner fails to demonstrate or even allege that the Department is a separate legal entity having jural authority. *See Torti v. Hughes*, 2007 WL 4403983, at *2 (N.D. Tex. Dec. 17, 2007) (dismissing the claims against the Grand Prairie Police Department under 28 U.S.C. § 1915(e)(2) because the plaintiff failed to allege or otherwise demonstrate it has a jural existence); *Williams v. Dallas Police Officer*, 2021 WL 4552281, at *4 (N.D. Tex. Oct. 5, 2021) (dismissing plaintiff's claims against the Irving Police Department because it is a "non-jural entit[y], and Plaintiff has neither alleged nor shown that [it has] been granted the capacity to engage in litigation on [its] own"). Therefore, the District Judge should DISMISS Winegarner's claims against the Department under Rule 9(a) and 12(b)(6).

## II.    Winegarner fails to state a claim against the City.

The City moves to dismiss Winegarner's § 1983 claim against it on the grounds that he fails to adequately plead the elements of a *Monell* claim, a failure to train or supervise claim, and a Title VI claim.

### *Winegarner Fails to Plead the Elements of a* Monell *Claim.*

The City moves to dismiss Winegarner's § 1983 claim asserted against it because he does not plead "sufficient facts to establish either a constitutional violation by the City or a policy, custom, or practice of the City that was the moving force of a constitutional violation." City's Mot. 6–7.

A municipality is a "person" subject to liability under § 1983 only if municipal employees inflicted the deprivation of a constitutional right pursuant to an official policy or custom. *Monell*, 436 U.S. at 690; *see also Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Thus, to state a claim for municipal liability, a plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). Isolated unconstitutional actions by municipal employees will almost never trigger municipal liability. *Piotrowski*, 237 F.3d at 578. And a municipality cannot be held liable simply on a theory of *respondeat superior. Monell*, 436 U.S. at 691.

7

As to the first element of a *Monell* claim, an "official policy 'usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Covington v. City of Madisonville*, 812 F. App'x 219, 225 (5th Cir. 2020) (per curiam) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)). A "pattern of conduct" is necessary when the municipal actors are not policymakers. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010). A pattern "requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (citations omitted). It also requires "'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (citations omitted). "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citations omitted).

Here, Winegarner's complaint contains only conclusory or speculative assertions as to a policy or custom. He conclusively states that the City has a "custom and practice of tolerating (if not encouraging or ratifying) misconduct by its officers" without pleading a pattern with requisite specificity, similarity, or numerosity. Compl. ¶ 3 (ECF No. 3). And instead of identifying any official written

policy or widespread custom or practice, he repeatedly refers to evidence that *might be discovered* through the discovery process. *See, e.g.* Compl. ¶ 4 ("per what maybe found out in Discovery as an IPD's longstanding customs and practices, [the Defendants], at the scene of [Officer] Hammel's unlawful use of excessive force against [Winegarner], failed to intervene"); *id.* ¶ 6 ("In discovery, we may find, the City of Irving's longstanding custom and practice of unchecked Fourth Amendment violations committed by IPD officers against its citizenry . . . were moving forces behind the violation of [Winegarner's] constitutional rights"); *id.* ¶ 26 ("Upon Discovery we might found out the city encourages and enables aggressive, predatory police officers and unconstitutional force practices"); *id.* ¶ 74 ("With Discovery of this Suit we may find that, Before and after August 23, 2022, the City of Irving, with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted and/or ratified a custom, pattern, or practice on the part of its officers of the improper use of force, including deadly force").

These conclusory and speculative allegations are insufficient to plausibly allege the existence of any particular policy or custom of the City for a *Monell* claim. *See Brown v. City of Dallas*, 2024 WL 5320559, at *3 (N.D. Tex. Dec. 31, 2024) (Rutherford, J.) (finding that plaintiff failed to state a claim under *Monell* when his complaint was "limited to allegations of excessive force used against him" because he did not "identif[y] any official written policy or widespread custom or practice in his complaint," and he did not "plead[] a pattern with the requisite

specificity, similarity, or numerosity"), *adopted by*, 2025 WL 82535 (N.D. Tex. Jan. 13, 2025); *Birabil v. Martinez*, 2016 WL 4402259, at *6 (N.D. Tex. July 11, 2016) (holding that "[b]ecause they rely on a single incident and vague generalities and conclusions, Plaintiffs have not sufficiently alleged an official policy or custom, a necessary element to municipal liability under *Monell*, and therefore have failed to nudge their claim across the line from conceivable to plausible"), *adopted by*, 2016 WL 4411412 (N.D. Tex. Aug. 18, 2016). Isolated unconstitutional actions by municipal employees, like those alleged of Officers Hammel, Reyes, Ivey, and Phillips, "are not the persistent, often repeated, constant violations that constitute custom and policy." *Piotrowski*, 237 F.3d at 581.

Winegarner's assertions about what the discovery process *might* reveal are similarly insufficient to state a *Monell* claim. *See, e.g.*, *Zinnah v. Lubbock State Supported Living Ctr.*, 2023 WL 7314350, at *2 (5th Cir. Nov. 6, 2023) (noting that plaintiffs "cannot simply rely on vague assertions with the unsubstantiated hope that discovery will later vindicate them"); *Cepeda v. Emerald Corr. Mgmt. LLC*, 2019 WL 4999973, at *4 (W.D. Tex. Aug. 28, 2018) ("Plaintiff cannot overcome the minimum pleading standard by arguing that additional facts will be unearthed during the discovery stage"); *Cf. Barnes v. City of El Paso*, 677 F. Supp. 3d 594, 610 (W.D. Tex. June 12, 2023) (finding that plaintiff's allegations plausibly suggested a pattern of constitutional violations by the city because "before conducting any discovery, [she] ha[d] alleged twenty-one specific incidents— describing ten in detail—of EEPD officers using excessive force" and she "expressly

state[d] that her allegations [were] 'based on a limited data set that does not include all instances'" which "indicat[ed] that additional instances could be uncovered in discovery").

Where a plaintiff's *Monell* claim fails as to one prong—as is the case here—the Court "need not consider whether [his] claim also fails the other two *Monell* prongs." *Brown v. Tarrant Cnty., Tex.,* 985 F.3d 489, 497 & n.11 (5th Cir. 2021); *see also Zarnow*, 614 F.3d at 168–69 (court need not consider "moving force" prong because it found no "custom or policy" to link to the alleged unconstitutional conduct). Thus, since Winegarner has failed to demonstrate an official policy or custom, the Court finds that the City is entitled to dismissal of Winegarner's claims against it without further analyzing the remaining *Monell* prongs.[2]

The District Judge should therefore GRANT the City's motion as to Winegarner's *Monell* claim.

### *Winegarner Fails to State a Claim for Failure to Train or Supervise.*

A municipality's failure to train or supervise its employees can serve as a basis for liability under 42 U.S.C. § 1983. *See Deville v. Marcantell*, 567 F.3d 156,

---

[2] However, the Court notes that Winegarner fails to plead the identity of the City's final policymaker. This omission is fatal to his claim. *See Davenport v. City of Garland, Tex.*, 2010 WL 1779620, at *2 (N.D. Tex. Apr. 9, 2010) ("Plaintiff makes complaints against the City's policies but fails to name the final policymaker or state any facts which would allow the Court to make that determination. These bare assertions amount to nothing more than a "formulaic recitation of the elements" of a municipal liability claim. . . . As such, the allegations are conclusory and not entitled to the assumption of truth.") (internal citations omitted), *rec. accepted*, 2010 WL 1779619 (N.D. Tex. Apr. 30, 2010).

170–71 (5th Cir. 2009). To bring a failure-to-train claim, a plaintiff must allege facts sufficient to show that "(1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Edwards v. City of Balch Springs*, 70 F.4th 302, 312 (5th Cir. 2023) (internal quotation marks and citation omitted).

"[F]or liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective." *Id.* (citation omitted). While courts "only require 'minimal factual allegations' about the training programs at the pleading stage," *Barnes*, 677 F. Supp.3d at 614 (internal citation omitted), "a plaintiff cannot state a failure-to-train claim by making a 'conclusory allegation that it is "apparent from the facts of [the] case" that [] excessive force training . . . was insufficient." *Id.* (citing *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015)).

Here, Winegarner alleges in a conclusory manner that the City's training and supervision of its police officers is inadequate, but he does not describe how it is insufficient. *See* Compl. ¶ 13 ("Defendants maybe, serial predators who if not stopped by the Court, will . . . be walking 'Monell' violators, encouraged and fully embraced by the City's training on dangerous restraint techniques."); *id.* ¶ 75 ("By failing to discipline all officers consistently[,] . . . City and IPD policymakers, with the department's ratification and approval, have approved of a deficient policy,

custom, or practice of the improper use of force, maybe including deadly."); Resp. 7 ("If the City of Irving Police Dept. has been training their officers not to escalate the situations of an arrest, then why is it acceptable to [Sergeant] Phillips, and others in charge of them, for Hammel, Reyes, and Ivey, to do the exact opposite in the violent abusive arrest of Plaintiff?"). Instead, his failure to train or supervise claim is based on a single incident and speculation as to what discovery *might* reveal about other instances. *See* Compl. ¶ 74 ("With discovery of this Suit we may find, Before and after August 23, 2022, the City of Irving, with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted and/or ratified a custom, pattern or practice on the part of its officers of the improper use of force, including deadly force."). He also fails to allege any facts indicating that the City was deliberately indifferent to his constitutional rights.

Winegarner's allegations are insufficient to state a claim under Rule 12(b)(6) and should be dismissed. *See Rivens-Baker v. Riley*, 2024 WL 1173045, at *6 (W.D. Tex. Feb. 15, 2024) (dismissing failure to train or supervise claim when the complaint "contain[ed] no allegations relative to a pattern of violations" and was instead "based on a single incident"); *Montgomery v. Hollins*, 2019 WL 2424053, at *7 (N.D. Tex. May 8, 2019) (Horan, J.) (rejecting plaintiff's failure to train or supervise claims of municipal liability because of the "absence of 'minimal factual allegations' that could ultimately support a showing that the City's training procedures were inadequate—and, further, inadequate as a result of deliberate

indifference"), *adopted by*, 2019 WL 2422493 (N.D. Tex. June 10, 2019); *Barnes*, 677 F. Supp. 3d at 614 (plaintiff's allegations that the El Paso Police Department "fails to properly train officers in use of force" and that the supervisor "allowed these deficiencies to persist despite knowing that EPPD had a 'widespread practice of officers using excessive . . . force" were "wholly conclusory" and "fail[ed] to identify a particularized issue with the City's training programs"). *Cf. Tuttle v. Sepolio*, 68 F.4th 969, 975–76 (5th Cir. 2023) (concluding that the threshold for pleading a failure to supervise claim was met when plaintiffs alleged "multiple instances in which Goines fraudulently obtained a search warrant and in which violence occurred" and that "Gonzales—in his capacity as Goines' supervisor— knew about these infractions, but did nothing to correct them").

The District Judge should therefore GRANT the City's motion as to Winegarner's claim for municipal liability for failure to train or supervise.

### *Winegarner Fails to State a Title VI Claim.*

Winegarner also brings a claim against the City for violating Title VI, *see* Compl. ¶¶ 79–86, which the City moves to dismiss. *See* City's Mot. 22.

Title VI of the Civil Rights Act states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To sustain a Title VI claim, Winegarner must allege that the City engaged in *intentional* discrimination based on race and that the City received federal financial assistance.

*Pathria v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 531 F. App'x 454, 455 (5th Cir. 2013) (per curiam) (emphasis in original). And "in Title VI cases that do not involve an official policy of intentional discrimination, a plaintiff must allege that 'an appropriate person—an official authorized to institute corrective measures—had actual knowledge of the discrimination and responded with deliberate indifference." *Bhombal v. Irving Indep. Sch. Dist.*, 2018 WL 2127760, at *8 (N.D. Tex. May 9, 2018) (internal citation omitted).

Winegarner alleges that the City receives federal financial assistance, but he does not set forth any specific facts indicating that the City engaged in intentional discrimination based on his race. *See* Compl. ¶¶ 79–86. Instead, he merely contends that after the parties undergo discovery, they "may find" that the City "has engaged and continues to engage in a pattern and practice of race discrimination in its policing practices" and that the Department "stops, arrests, and uses force against Black individuals at significantly higher rates than white individuals in similar instances." *Id.* ¶¶ 82–83. This is insufficient to survive a motion to dismiss. *See Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 627 (N.D. Tex. 2017) (internal citation omitted) (explaining that "[a] complaint that does not set forth 'specific allegations of acts that were taken with discriminatory intent' does not state a claim for Title VI violations" and finding that plaintiff's allegations failed to state a claim because he "fail[ed] to plead any facts suggesting that [he was] treated differently than other similarly situated [persons] based on his race" and instead "advances only his subjective belief that

15

[his supervisor's] actions were motivated by [plaintiff's] race"). Winegarner similarly failed to allege any facts regarding an official discriminatory policy or an "appropriate person" who had actual knowledge of the allegedly discriminatory acts committed by the officers and responded with deliberate indifference.

Thus, the District Judge should DISMISS Winegarner's Title VI claim.

### III.    Winegarner's Claims Against the Officer Defendants Fail.

The Defendant Officers argue that (1) all of Winegarner's claims against Officer Phillips are barred by qualified immunity; (2) Winegarner's wrongful arrest, excessive force, and malicious prosecution claims are barred by qualified immunity as to the remaining Officer Defendants; and (3) Winegarner's failure to intervene and selective enforcement claims fail to state a claim. *See generally* Officers' Mot. (ECF No. 10). Included in their appendix to their motion is the footage from the body-worn camera (BWC) worn by Officer Hammel during the incident. *See generally* Officers' Mot. App. (ECF No. 11). Winegarner filed a response that merely reiterates his assertions from his Complaint regarding the Officers' alleged use of excessive force and false charge of resisting arrest. *See generally* Resp. (ECF No. 14).

### *Legal Standard – Qualified Immunity*

A governmental employee sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). "Qualified immunity protects government officials from performing discretionary functions from suit and liability for civil damages to the extent their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Blakely v. Andrade*, 360 F. Supp. 3d 453, 477 (N.D. Tex. 2019) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In other words, qualified immunity protects government officials when their actions "could reasonably have been believed to be legal." *Anderson v. Valdez*, 845 F.3d 580, 599 (5th Cir. 2016). And "this immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 335 (1986)).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). *See also King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) ("[O]nce properly raised by the defendant, the 'plaintiff has the burden to negate the assertion of qualified immunity.'") (citing *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009)); *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.").

"Government officials like [Officers Phillips, Hammel, Reyes, and Ivey] enjoy qualified immunity 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Brown v. Tarrant Cnty., Tex.*,

985 F.3d at 494 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Further, courts "have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id.* Here, the Court engages with the first prong first.

### *Qualified Immunity Bars Winegarner's Claims Against Officer Phillips.*

Winegarner's Complaint asserts that Officer Phillips reviewed and "responded to" a complaint sent to the IPD by Winegarner's father but did not investigate the complaint sufficiently. Compl. ¶ 5. The Officers' motion argues that Phillips is entitled to qualified immunity because he "had no personal involvement in any alleged constitutional violations and only reviewed the Internal Affairs complaint submitted by Plaintiff and/or his father" and thus did not violate a statutory or constitutional right. Mot. 5.

Because "personal involvement is an essential element of a civil rights cause of action," *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983), and Winegarner has not pleaded any facts describing Phillips' personal involvement in any alleged constitutional violations, Phillips is entitled to qualified immunity. *See Jimerson v. Lewis*, 94 F.4th 423, 429 (5th Cir. 2024) ("A plaintiff seeking to overcome qualified immunity must specifically identify each defendant's personal involvement in the alleged wrongdoing.") (internal citation and quotation marks omitted); *Blanchard v. Gardner*, 2024 WL 5295379, at *13 (E.D. Tex. Sept. 26, 2024) (finding that a police officer named as a defendant was "entitled to qualified immunity on [p]laintiff's excessive use of force claim" because "the record establishe[d] no personal involvement with respect to [the officer] and the alleged

18

use of force" as the officer did not arrive on the scene until after the force had been deployed by other officers and he merely "tried to help her get a sip of water while she was waiting in the police car"), *rec. adopted sub nom. Blanchard v. City of Tyler Police Dep't*, 2025 WL 41920 (E.D. Tex. Jan. 7, 2025).

Thus, the District Judge should DISMISS Winegarner's claims against Officer Phillips.

### *Qualified Immunity Bars Winegarner's Claim for Wrongful Arrest.*

The Court now turns to Officers Hammel, Reyes, and Ivey's assertions of qualified immunity as to Winegarner's wrongful arrest claim. Winegarner's Complaint alleges that Defendants violated his rights when they falsely arrested him for resisting arrest. *See* Compl. 1, ¶¶ 5, 11, 32–33, 36, 50–51.

"An arrest is unlawful unless it is supported by probable cause." *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) (citation omitted). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996) (citation omitted). A person resists arrest "if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest . . . by using force against the peace officer[.]" Tex. Pen. Code § 38.03(a). "It is no defense . . . that the arrest or search was unlawful." *Id.* at § 38.03(b). That means, "[i]n Texas, the act of resisting can supply

19

probable cause for the arrest itself[.]" *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013).

Qualified immunity cases often involve competing versions of events, and this case is no exception. When the facts are disputed—as in the present case—the Court must use the plaintiff's version of the facts, unless it is blatantly contradicted by the record, to evaluate whether the officers are entitled to qualified immunity. *See Young v. City of Irving*, 2024 WL 4193936, at *9 (N.D. Tex. Sept. 12, 2024) (quoting *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) ("[A] plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings."). Here, Winegarner repeatedly refers to "the Body Worn Camera, BWC, Video" in his complaint, *see, e.g.*, Compl. 1, ¶¶ 4, 10, and Defendants include the footage in an appendix to their motion. *See* Officers' Mot. App. (BWC) (ECF No. 11). To the extent that the BWC footage "blatantly contradicts" Winegarner's allegations, the Court finds it proper to consider the footage because Winegarner's consistent references to it incorporate the footage by reference, and the footage is clearly central to Winegarner's claims against the Officers in this suit. *See, e.g.*, *Terrell v. Town of Woodworth*, 2024 WL 667690, at *5 (5th Cir. Feb. 19, 2024) (per curiam) ("[T]he district court properly considered the video evidence from the officers' two body cams and Gonzales's dash cam that Defendants attached to their motion to dismiss because Terrell consistently referenced the video evidence in his

complaint . . . and the video evidence is clearly central to his claims against Defendants in this suit.").

Here, neither Winegarner's Complaint nor his Response contain any allegations as to the reason for the initial traffic stop, the details surrounding his arrest, or assertions that probable cause was lacking. Rather, he merely challenges that he was resisting arrest. But the BWC footage "blatantly contradicts" Winegarner's assertion—it shows that Hammel put his hand on Winegarner's wrist and ordered Winegarner to get out of the car but, instead of complying with Hammel's order, Winegarner pulled away from Hammel. BWC at 1:00–1:12. "The great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest." *Ramirez v. Martinez*, 716 F.3d at 376 (collecting cases).

Thus, Winegarner fails to state a claim for false arrest and fails to overcome the Officers' assertion of qualified immunity. He contends that the charges against him were dismissed by the Dallas County District Attorney, *see* Compl. 1, ¶¶ 5, 32, 50, but "the fact that the charges against [a plaintiff] were ultimately dismissed is irrelevant to the probable cause analysis, which focuses on what the officer could have reasonably believed as to whether there was probable cause for an arrest at the time of the arrest." *Esquivel v. Eastburn*, 2021 WL 1667132, at *4 (W.D. Tex. Apr. 8, 2021). Consequently, Winegarner cannot show that the Officer Defendants violated a statutory or constitutional right by arresting him, and thus they are

entitled to qualified immunity. The District Judge should therefore GRANT the Officers' motion as to Winegarner's wrongful arrest claim.

### *Qualified Immunity Bars Winegarner's Claim for Excessive Force.*

Winegarner also alleges that the Officer Defendants' use of force against him was excessive and violated his Fourth Amendment right against unreasonable seizures. *See* Compl. ¶¶ 15, 52–57. In response, Defendants Hammel, Reyes, and Ivey assert that they are entitled to qualified immunity on Winegarner's excessive force claim. Officers' Mot. 2, 14.

"To overcome [an officer's] claim of qualified immunity on [a] claim of excessive force, [a plaintiff] must show (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Terrell v. Allgrunn*, 114 F.4th 428, 437 (5th Cir. 2024). The plaintiff's asserted injury "must be more than a de minimis" injury. *Hanks v. Rogers*, 853 F.3d 738, 744–45 (5th Cir. 2017) (internal citation and quotation marks omitted); *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 891 (N.D. Tex. 2018), *aff'd sub nom. Mohamed as Next Friend for A.M. v. Irving Indep. Sch. Dist.*, 758 F. App'x 352 (5th Cir. 2019). The injury can be physical or psychological. *Mohamed for A.M.*, 300 F. Supp. 3d at 891 (citing *Ikerd v. Blair*, 101 F.3d 430, 434 n.9 (5th Cir. 1996)). If the injury is psychological, it must be "substantial" to meet the injury element of an excessive force claim. *Id.* (citations omitted).

"[T]he right to make an arrest of investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts must "'focus on the officers' reasonable perception of the events at issue, as they happened, *without* the aid of hindsight, multiple viewing angles, slow motion, or the ability to pause, rewind, and zoom.'" *Id.* (citing *Tucker v. City of Shreveport*, 998 F.3d 165, 176 (5th Cir. 2021)).

Here, the Officer Defendants contend that Winegarner fails to overcome qualified immunity as to his excessive force claim because his injuries are *de minimis*. Officers' Mot. 15. Winegarner alleges that his "physical injuries included difficulty breathing, fear of being killed by them, abrasions to his knees, contusions on his back, knees, wrists, shoulders, and neck, and neck trauma as a result of Defendants Hammel and Reyes' assault" and his psychological injuries include "significant [a]nxiety, [d]epression, PTSD and emotional distress." Compl. ¶¶ 37, 39. But these conclusory allegations do not establish more than a *de minimis* injury. *See Brown v. Coulston*, 463 F. Supp. 762, 780 (E.D. Tex. May 29, 2020) (finding that plaintiff's allegations were conclusory and "fail[ed] to state anything more than a de minimis injury" when the plaintiff alleged that he "suffered injuries and severe, lasting pain to his head, back, neck, and legs" and "psychological injuries including emotional anguish and fear"); *Brooks v. City of W. Point, Miss.*, 639 F. App'x 986, 990 (5th Cir. 2016) (holding that physical injuries such as "abrasions to [plaintiff's] hands and knees, some pain in his back, and unspecified

problems with his asthma" are *de minimis*); *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) ("[M]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force."); *Zavala v. Harmon*, 2022 WL 17220034, at *6 (S.D. Tex. Oct. 19, 2022) (noting that "injuries like bruises, contusions, and abrasions are insufficient to maintain an excessive force claim under Fifth Circuit precedent" because they are *de minimis*).

Thus, Winegarner fails to state a claim for excessive force,[3] and the District Judge should GRANT the Officer Defendants' motion as to the excessive force claim.

---

[3] Because Winegarner's allegations fail to satisfy the first element of an excessive force claim, the Court need not consider the remaining elements. *See Clark v. City of Burleson*, 2020 WL 635842, at *4 (N.D. Tex. Feb. 11, 2020) ("But the Court does not proceed to the second element of the excessive force analysis because [plaintiff's] claim fails on the first."); *Ferguson v. Comal Cnty.*, 2024 WL 4849080, at *4 (W.D. Tex. Nov. 18, 2024) ("In any event, the Court does not reach the remaining elements of the excessive force analysis because [p]laintiff has failed on the first element."). However, in the interest of thoroughness, the Court will briefly note that Winegarner also fails to show that the Officers' use of force was "clearly excessive" because the BWC footage visibly depicts Winegarner refusing to comply with the commands of the Officers and actively pulling way when Officer Hammel instructs him to get out of the car. *See* BWC at 1:00–1:12; *see also Young v. City of Irving*, 2024 WL 4193936, at *9 (N.D. Tex. Sept. 12, 2024) (finding that "[t]he police video does not permit the reasonable inference that the use of force in this case was unreasonable when [plaintiff] was actively resisting arrest and repeatedly refusing to comply with officer commands" and thus granting the individual officer defendants' motion to dismiss plaintiff's excessive force claim based on qualified immunity).

*Qualified Immunity Bars Winegarner's Claim for Malicious Prosecution.*

Winegarner's Complaint also alleges that he was "false[ly] [and] malicious[ly]" charged with resisting arrest, and that the Officers "treated [him] with malicious intent to harm him" and "depriv[ed] [him] of his rights either maliciously or by acting with reckless disregard for whether his rights would be violated." Compl. 1, ¶¶ 42, 54, 63, 69. The Court liberally construes these allegations as a malicious prosecution cause of action. *See* Officers' Mot. 19. However, Winegarner fails to allege sufficient facts to state a claim for malicious prosecution.

A party asserting a § 1983 malicious prosecution claim must demonstrate: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." *Santander v. Salazar*, 133 F.4th 471, 482 (5th Cir. 2025). Regardless of whether Winegarner alleges a plausible claim for malicious prosecution, such a claim cannot overcome qualified immunity because "the elements of a § 1983 malicious prosecution claim had not been established at the time of the incident, such that the law was unsettled at the time of [Winegarner's] conduct." *Id.* The Supreme Court did not recognize a federal claim for malicious prosecution until April 2022 in *Thompson v. Clark*, 596 U.S. 36, 42 (2022), and it still "largely left

the question of elements to the lower courts." *Id.* The Fifth Circuit did not articulate the elements of such a claim until February 2023 in *Armstrong v. Ashley. Id.*

The alleged incident in this case occurred in September 2022, which is after *Thompson* but before *Armstrong*, and thus Defendants "could not have violated clearly established law because, at the time, there was no clearly established law in this circuit to violate." *Id.* Winegarner's malicious prosecution claim therefore fails to overcome Defendants' assertion of qualified immunity, *see id.*, and the District Judge should GRANT Defendants' motion as to Winegarner's malicious prosecution claim.

### *Winegarner Fails to State a Claim for Failure to Intervene.*

Winegarner additionally alleges that Reyes, Ivey, and Phillips "failed to intervene to stop" Hammel's "unlawful use of excessive force." Compl. ¶ 4; *see also* Compl. ¶¶ 36, 68.

The Fifth Circuit has held that an "officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995); *accord Elliot v. Linnell*, 269 F. App'x 450, 451 (5th Cir. 2008). But "if a court determines that no excessive force was present, there can be no claim for failure to intervene." *Garrett v. Crawford*, 2016 WL 843391, at *6 (W.D. Tex. Mar. 1, 2016) (citing *Gilbert v. French*, 364 F. App'x 76, 83–84 (5th Cir. 2010)).

Winegarner's failure to intervene claim necessarily fails because he fails to state a claim for excessive force, as discussed above. *See Cobarobio v. Midland Cnty., Tex.*, 2015 WL 13608102, at *13 (W.D. Tex. Jan. 7, 2015) (stating that "[e]xcessive force is a necessary element to assert a claim of failure to intervene" and therefore holding that "[b]ecause [p]laintiff has failed to allege facts to support a claim that the force used by the officers . . . was clearly excessive, [p]laintiff has also failed to state a claim of failure to intervene"). The District Judge should therefore GRANT Defendants' motion and DISMISS Winegarner's failure to intervene claim.

### *Winegarner Fails to State a Claim for Selective Enforcement.*

In his Complaint, Winegarner also alleges that he was subject to race discrimination in violation of the Fourteenth Amendment's Equal Protection Clause for selective enforcement of the law. *See* Compl. ¶¶ 58–66. Defendants argue that Winegarner's claim should be dismissed because he fails to allege sufficient facts identifying a race-based motive or a similarly situated person. Officers' Mot. 24–25.

To successfully bring a selective prosecution or enforcement claim, a plaintiff must establish that "the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan v. City of Madison*, 213 F.3d 267, 277 (5th Cir. 2000). "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Allred's Produce v. U.S. Dep't of Agric.*,

178 F.3d 743, 748 (5th Cir. 1999) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). "Rather, it must be shown that the selective enforcement was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (internal quotation marks and citation omitted).

To establish a claim under the Equal Protection Clause, a plaintiff must show that two classes of similarly situated persons were treated differently. *Id.* A plaintiff also must demonstrate "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (internal quotation marks and citation omitted). All persons need not "be dealt with identically[,]" but any distinctions made must "have some relevance to the purpose for which the classification is made." *Wood v. Collier*, 836 F.3d 534, 538-39 (5th Cir. 2016) (internal quotation marks and citation omitted).

Here, Winegarner has not made any factual allegations sufficient to conclude that the Officers' action towards him could have been motivated by his race or his exercise of a fundamental constitutional right. Nor has he alleged any facts demonstrating that he was treated differently than similarly situated individuals. Instead, he merely makes speculative and conclusory allegations that his "Biracial [] personage may have set off something in IPD, Hammel's head that caused him to tell David that he was thinking derogatorially against David, Already just seeing his African American Hair Rastafari Twist Braids was the but-for cause of [] Hammel's statement" [sic] about Winegarner being a "dumbass Roadside Lawyer." Compl. ¶ 62. This is insufficient to state a claim for selective enforcement

28

and race discrimination under the Fourteenth Amendment. *See Lewis v. Smith*, 2022 WL 10965839, at *4–5 (5th Cir. 2022) (finding that the district court properly dismissed plaintiff's selective enforcement claim when his complaint does not describe any information about similarly situated individuals or make any "factual, nonconclusory allegations that could lead to the conclusion that one motivation for [defendant's] enforcement of the policy against him was either his race or his exercise of a fundamental right"); *Ellis v. City of White Settlement, Tex.*, 2023 WL 8813890, at *6 (N.D. Tex. Nov. 28, 2023) (holding that plaintiff did not show a Fourteenth Amendment equal protection violation when he "cite[d] to several online articles purporting to show the City's 'very racial history'" but "pleads no facts to show selective enforcement of this alleged policy" and "states no facts to show any sort of discrimination" in either his complaint or response briefs), *adopted by*, 2023 WL 8816382 (N.D. Tex. Dec. 20, 2023).

Thus, the District Judge should GRANT Defendants' motion and DISMISS Winegarner's selective enforcement claim.

### IV.    Leave to Amend

Winegarner has not requested leave to amend his complaint. Nonetheless, a *pro se* plaintiff ordinarily should be granted leave to amend his complaint before dismissal. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). But the Court is not required to grant leave "if the plaintiff has already pleaded his best case," *id.*, and an amendment would be futile. *See Mandujano v. City of Pharr, Texas*, 786

F. App'x 434, 438 (5th Cir. 2019); *Bernegger v. Dep't of Revenue*, 785 F. App'x 209, 211 n.1 (5th Cir. 2019).

Here, any amendment to Winegarner's claim against the Department would be futile because it is a non-jural entity that cannot be sued. *See Sullivan v. Garza Cnty. Sheriff's Office,* 2023 WL 9219176, at *5 (N.D. Tex. Nov. 3, 2023) (concluding that granting leave to amend complaint against sheriff's office would be futile because the sheriff's office cannot be sued), *adopted by*, 2024 WL 130758 (N.D. Tex. Jan. 11, 2024). Similarly, any amendment to his wrongful arrest, excessive force, and malicious prosecution claims against the Officers would be futile because those claims are barred by qualified immunity. *See Malloy v. Municipality of City of Com., Tex.*, 2023 WL 10352172, at *6 (E.D. Tex. July 14, 2023) (finding leave to amend futile when plaintiff did not meet his burden to overcome defendants' assertion of qualified immunity), *adopted by*, 2024 WL 1020565 (E.D. Tex. Mar. 8, 2024). And Winegarner should not be given leave to amend his any of his remaining claims, including any claim against the City or his failure to intervene and selective enforcement claims against the Officers, because he gives no indication that he has not already pleaded his best case. He does not state any material facts he would have included in an amended complaint. *See Shope v. Texas Dep't of Criminal Justice*, 283 F. App'x 225, 226 (5th Cir. 2008) (unpublished) ("Shope does not allege what facts he would include in an amended complaint. Therefore, Shope has not shown that the district court abused its discretion in dismissing his complaint.") (citing *Ashe v. Corley*, 992 F.2d 540, 542

(5th Cir. 1993)); *Goldsmith v. Hood County Jail*, 299 F. App'x 422, 423 (5th Cir. 2008) (unpublished) (affirming district court's dismissal of *pro se* complaint when litigant failed to "explain what facts he would have added or how he could have overcome the deficiencies found by the district court if he had been granted an opportunity to amend").

To the extent Winegarner wants an opportunity to amend his complaint as to any other claims, his opportunity to object to this recommendation (explained below) gives him a chance to plead his best case by explaining how he could amend his complaint to allege a plausible federal claim. But unless he shows the Court that he could amend to allege a plausible claim, he is not entitled to further leave to amend.

## Recommendation

In conclusion, the District Judge should GRANT the Motions to Dismiss filed by the Irving Police Department (ECF No. 9), (2) the City of Irving (ECF No. 12), and Irving Police Department Officers Preston Hammel, Travis Reyes, Justin Ivey, and John Phillips (ECF No. 10) and DISMISS all of Winegarner's claims against Defendants.

**SO RECOMMENDED.**

August 20, 2025.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## <u>INSTRUCTIONS FOR SERVICE AND</u><br><u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district judge, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).